UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

|  |  |
|---|---|
| IN RE ) | |
| ) | Case No. 11-21436-TLM |
| MAURO SOTO, JR., ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**
_____

Before the Court is the motion of the United States Trustee ("UST") to dismiss this chapter 7 case under § 707(b)(3), Doc. No. 20 ("Dismissal Motion").[1] On May 30, 2012, the Dismissal Motion was heard and taken under advisement. This Decision constitutes the Court's findings and conclusions on the contested matter. Fed. R. Bankr. P. 7052, 9014. The Court determines that the Dismissal Motion is well taken and shall be granted.

**BACKGROUND AND FACTS**

At the May 30 hearing, Drake Mesenbrink, counsel for the Debtor, and Gary Dyer, counsel for the UST, appeared and presented argument. Debtor was not present. Neither attorney called any witnesses, nor introduced evidence. The arguments on the Dismissal Motion were based entirely on the schedules,

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S. Code §§ 101-1532.

MEMORANDUM OF DECISION - 1

statements and other papers in the Court's docket. Thus, the facts relevant to the Dismissal Motion are effectively uncontested.

Mauro Soto, Jr. ("Debtor") filed a voluntary petition under chapter 7 on November 2, 2011. Doc. No. 1. A review of the entirety of the filing establishes that he is an individual debtor with primarily consumer debts. *Id.*

Debtor is single, with no dependents. *Id.* at sched. I. His income at filing consisted of "pension or retirement income" of $4,753.68 per month. *Id.* at sched. I, line 12. He disclosed no other income and, on line 17 of schedule I, did not disclose any anticipated change in income for the year following filing.

Debtor's monthly expenses included a mortgage payment of $3,135.70. He also disclosed payments on "taxes" of $200 per month. Other monthly expenses were not noteworthy. The total expenses were $4,554.65, leaving a net monthly income of $199.03. *Id.* at sched. J.

Notwithstanding the monthly mortgage payment shown on schedule J, Debtor proposed to surrender his real property located at 7005 W. Senequoteen Trail in Spirit Lake, Idaho. Doc. No. 1 at 31 (§ 521 statement of intention). Debtor's schedules A (real property) and D (secured debts) indicated this property had a fair market value of $199,000 and was security for an obligation of $334,656 owed to Bank of America.

Debtor's statement of financial affairs ("SOFA") corroborated his receipt of

MEMORANDUM OF DECISION - 2

retirement income. *Id.* at SOFA, resp. to question 2 (showing $47,536.80 in "2011 retirement income through Nov. 1, 2011" and $57,340.44 in retirement income in 2010 and 2009). No other income was shown in the SOFA as having been received. The SOFA also disclosed that Debtor had been making payments of $450 per month to the Idaho State Tax Commission ("ISTC") and $400 per month to the Internal Revenue Service ("IRS"), and that Debtor still owed $12,000 to the ISTC and $23,611 to the IRS. *Id.* at resp. to question 3.

Debtor's listing of priority unsecured debts consisted of a $9,842 debt to the ISTC, $23,612 to the IRS, and $8,000 to Kootenai County related to the real property. *Id.* at sched. E. His nonpriority unsecured debts total $8,354. *Id.* at sched. F.

On November 3, Debtor filed a "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation," Doc. No. 8 ("Form B22A"). While it establishes that Debtor's annualized current monthly income from his retirement of $57,044.16 is over the applicable median family income of $39,120, it showed a negative monthly disposable income, and asserted that a § 707(b)(2) presumption did not arise. Form B22A lists among the expenses used to reach this conclusion $850 per month in payments on taxes, a figure consistent with the SOFA assertion of ongoing payments to the ISTC and IRS. Form B22A also lists $3,530 in future monthly payments on secured claims, consisting of $2,655 per

MEMORANDUM OF DECISION - 3

month on the Spirit Lake obligation and $875.00 per month on property at 1303 Helo St., San Anlendro, California.[2]

The UST in the Dismissal Motion notes that the record justifies the following changes to Debtor's asserted income and expenses in Form B22A:

(a) removal of the monthly secured debt payment of $3,135.70 listed in schedule J for the Spirit Lake property that Debtor is surrendering and replacement with an $876 rental expense based on the IRS allowance; and

(b) increasing non-mortgage expenses from $1,419, as claimed by Debtor, to $2,599 based on applicable IRS allowances and on Debtor's actual disclosed expenses where appropriate.[3] *See* Doc. No. 20; Doc. No. 20-1 (side-by-side Form B22A comparison). The UST's changes would result in monthly net income of $1,279, or $41,808 over 60 months, an amount sufficient to pay all schedule E and F priority and non-priority unsecured debts. *Id.*

In a February 28 "response" to the Dismissal Motion, Debtor alleged a change in circumstances based on his moving to Texas, where he now cares for his mother and a sister. Doc. No. 21. On May 14, Debtor filed amended schedules I

---

[2] This latter property does not appear on Debtor's schedule A, and his schedule D indicates that this claim is a debt of $88,275 for a "second" on a California home that was previously sold on a "short sale." It thus appears to be an unsecured, rather than secured, debt. The Court also presumes there is a typographical error and that the reference is to "San Leandro."

[3] In this regard, the UST analysis eliminated "back tax" payments, but included an allowance for current state and federal taxes on Debtor's retirement income which he had omitted on Form B22A.

MEMORANDUM OF DECISION - 4

and J. Doc. No. 30. Schedule I still showed him as "single" and with no dependents, but schedule J listed $600 per month for "support of Mother." Schedule J eliminated the mortgage expense on the Spirit Lake property and inserted a $600 per month rental expense. Debtor's amended schedules I and J resulted in net monthly disposable income of $1,280.17.[4]

**DISCUSSION AND DISPOSITION**

This Court explained in *In re Smith*, 09.3 I.B.C.R. 102 (Bankr. D. Idaho 2009), that the amendments to the Code made by Congress in 2005 replaced a presumption in favor of granting relief to chapter 7 debtors with § 707(b)(1), which provides that after notice and a hearing, the Court on its own motion or that of the UST, trustee or any party in interest, "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter."

The "means test" analysis, which starts with the information contained in Form B22A, establishes whether or not there is a "presumption" of abuse. However, the UST does not bring the Dismissal Motion under § 707(b)(2). Rather, it asserts only § 707(b)(3), which provides:

---

[4] This figure results in part from an increase in the retirement income from $4,753.68 per month to $4,889.67 per month. *Id.* at sched. I; *see also* Doc. No. 33 (amended schedule B filed May 29, the day prior to hearing).

MEMORANDUM OF DECISION - 5

> (b)(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider –
> > (A) whether the debtor filed the petition in bad faith; or
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).[5]

*Smith* holds that the phrase "totality of the circumstances" in § 707(b)(3)(B) allows the Court to consider pre-amendment case law construing and applying such language. 09.3 I.B.C.R. at 103 (citing *Price v. United States Tr. (In re Price)*, 353 F.3d 1135, 1139 (9th Cir. 2004)). Among such pre-amendment case law is *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir. 1988), which held "that the debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief would be a substantial abuse [under former § 707(b)]." *Id.* at 914. *Kelly* further held that "a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." *Id.* at 915. But, as *Smith* recognized, this was not a per se rule, and that "[w]hile the ability to repay debts alone may justify dismissal, it does not compel it." 09.3 I.B.C.R. at 103. The

---

[5] The UST does not advance an argument under § 707(b)(3)(A) regarding bad faith in filing the petition, and argues solely under § 707(b)(3)(B).

MEMORANDUM OF DECISION - 6

UST in *Smith* "base[d] its [§ 707(b)(3)] argument for dismissal solely on Debtor's alleged present and future ability to repay his debts." *Id.* So, too, does the UST in the present case.

Under its analysis of Debtor's schedules and Debtor's Form B22A, the UST has established an ability of Debtor to pay his debts in a chapter 13 case.[6] The magnitude of payment of priority and nonpriority unsecured debts varies depending on which approach is used and upon certain assumptions, but in either scenario the repayment is significant.[7] A *prima facie* case of § 707(b)(3)(B) abuse under the totality of the circumstances is established.[8]

---

[6] In concluding the UST carried its burden in *Smith*, the Court evaluated schedule I and J, *id.* at 103-04, and noted: "In its consideration of Debtor's ability to pay creditors, the Court looks at Debtor's actual income and expenses, and need not conduct a chapter 13 analysis based on the means test." *Id.* at 104 n.8. That the UST here analyzed both the schedules and means test information was unnecessary but not problematic.

[7] Schedule F nonpriority unsecured debts ($8,354), and the scheduled IRS and ISTC debts ($23,612 and $9,842), total $41,808. Debtor's amended I and J, Doc. No. 30, shows net monthly income of $1,280.17, which would generate $46,086.12 over 36 months and $76,810.20 over 60 months. (The UST's net monthly income in its analysis, *see* Doc. No. 20-1, is $1,279, almost exactly what Debtor's amended I and J suggest.) This establishes an ability to make significant payments. The Court appreciates that the possibility of other claims exists. Though it could be assumed that Kootenai County's claim is a real property tax claim secured against the Spirit Lake property and thus senior to the mortgage claim of Bank of America, there could be an unsecured deficiency claim by Bank of America after surrender of the Spirit Lake property, even though its amount cannot presently be determined. And there may be a claim for the mortgagee on the "short sale" property in San Leandro. Nevertheless, even should there be such claims, the ability of Debtor to pay a significant amount toward all unsecured debt remains clear.

[8] The burden of proof in seeking dismissal based on the totality of the circumstances under § 707(b)(3) is on the movant. *See generally* Russell, Bankruptcy Evidence Manual § 301:79 at 389-90 (2011-2012 ed.) (collecting cases). "Once a prima facie case [under § 707(b)(3)] is established by the UST, the burden of going forward with sufficient evidence to controvert the prima facie case is reposed in the non-moving party, the Debtor." *In re Perelman*,
(continued...)

MEMORANDUM OF DECISION - 7

In attempting to controvert this showing by the UST, Debtor relies in large part on the contention that his retirement income would be exempt under Idaho Code § 11-604(A)(3) and Idaho Code § 55-1001, and that considering such income in the § 707(b)(3)(B) context would have a "chilling effect on all bankruptcies." *See* Response, Doc. No. 21 at 4.[9] This argument was also the primary basis of opposition to the Dismissal Motion advanced at the time of hearing by Debtor's counsel.[10]

Debtor provided no authority to support his contention that exempt income should not be considered when determining a debtor's ability to repay for purposes of § 707(b)(3)(B). Indeed, applicable case law contradicts Debtor's position. In *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406 (9th Cir. BAP 1999), the Ninth Circuit BAP recognized that whether property is exempt from execution is "indirectly relevant" in chapter 13 through the § 1325(a)(4) calculation of how much creditors would receive in a chapter 7 and through the

---

[8] (...continued)
419 B.R. 168, 178 (Bankr. E.D.N.Y. 2009); *see also In re Robrock*, 430 B.R. 197, 209 (Bankr. D. Minn. 2010) (adopting UST's figures where "the Debtor produced no evidence at all to contradict the assumptions imposed by [the UST] on his inferences from all the documentation that the Debtor had provided to the U.S. Trustee.").

[9] Most of Debtor's Response, however, cites to and argues case law on the subject of denial of discharge under § 727, which is inapposite and unhelpful to the § 707(b)(3) issues presented.

[10] Debtor's counsel also raised arguments about whether a presumption of abuse was created but, as noted earlier, the UST did not advance § 707(b)(2) as a basis for its motion.

MEMORANDUM OF DECISION - 8

evaluation of good faith under § 1325(a)(3). *Id.* at 411 n.8. The BAP continued, however, by noting that "[a]part from these indirect considerations, a debtor's right to claim that property is exempt is irrelevant to its status as disposable income under chapter 13." *Id.*[11] Thus, income that is arguably exempt may nonetheless be considered when assessing a debtor's ability to fund a chapter 13 plan, which in turn informs whether dismissal under § 707(b)(3)(B) is warranted.

The exempt nature of the retirement income is not material to the § 707(b)(3) issue presented.[12] Debtor's other arguments have been considered and found to be lacking coherence or support.

**CONCLUSION**

Upon the record presented, the Court concludes that the UST has met its burden by a preponderance of the evidence, establishing that Debtor's case is an abuse of the provisions of chapter 7 under the totality of the circumstances. 11 U.S.C. § 707(b)(3)(B). The Dismissal Motion will be granted and the case dismissed. The UST shall submit a form of order accordingly.

---

[11] This Court has previously recognized *Burgie*'s implications in considering certain social security disability payments in the context of a chapter 13 plan modification under § 1329. *In re DeFrehn*, 03.3 I.B.C.R. 174, 176, 2003 WL 25273838, at *4-5 (Bankr. D. Idaho June 13, 2003).

[12] The Court need not determine whether it is in fact exempt, given *Burgie*. It notes, however, that Debtor claimed it exempt on schedule C, *see* Doc. No. 1 at 12, and no objections to that exemption were timely raised. *See* Fed. R. Bankr. P. 4003(b)(1).

MEMORANDUM OF DECISION - 9

DATED: June 8, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 10